NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 180794-U

NO. 4-18-0794

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 24, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| WILLIAM D. JENKINS, | ) | No. 13CF702 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Diane M. Lagoski, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant's postconviction counsel satisfied the requirements set forth in Illinois
Supreme Court Rule 651(c) (eff. July 1, 2017) and did not fail to provide defendant
with a reasonable level of assistance during postconviction proceedings.

¶ 2     Defendant, William D. Jenkins, appeals the circuit court's denial of his

postconviction petition following a third-stage evidentiary hearing. On appeal, he argues his

postconviction counsel failed to provide reasonable assistance in violation of Illinois Supreme

Court Rule 651(c) (eff. July 1, 2017) by failing to properly shape or support his *pro se*

postconviction arguments that (1) trial counsel provided ineffective assistance by not using police

reports to impeach the credibility of the State's occurrence witnesses and (2) appellate counsel

provided ineffective assistance on direct appeal by failing to raise meritorious issues that were

apparent from the record. We affirm.

¶ 3                              I. BACKGROUND

¶ 4        In December 2013, a grand jury returned a three-count indictment against defendant, charging him with attempt (armed robbery) (count I) (720 ILCS 5/8-4(a), 18-2(a)(4) (West 2012)), aggravated battery with a firearm (count II) (*id.* § 12-3.05(e)(1)), and aggravated discharge of a firearm (count III) (*id.* § 24-1.2(a)(2)). The charges were based on allegations that defendant shot the victim, James Gallaher, in the leg while attempting to take property from him.

¶ 5        In April 2014, defendant's jury trial was conducted. The State's evidence showed that on the evening of October 29, 2013, Gallaher was shot in the leg outside his residence, a second-floor apartment located on 11th Street in Quincy, Illinois. Gallaher testified he was visited that day by friends named "Maya" and Ella Epperson. Later, after those individuals left, Gallaher was at home with his two roommates, Josh McVey and Jordan McColez, and some friends, including Kristin Tucker, Shelby Perkins, and Kourtni Shankland. Gallaher admitted the group was "hanging out" and smoking marijuana. He also admitted that he sold marijuana to pay his bills while residing in the 11th Street apartment. Inside the apartment, the police found drug paraphernalia, a digital scale, and marijuana.

¶ 6        At some point during the evening, Gallaher left his apartment and walked down a stairwell to talk on the phone with his girlfriend, Casey Ringerberg. At approximately 11 p.m., while he was speaking on the phone, Gallaher was approached by a "younger" African American man, whom he did not know and who asked for a "light." Gallaher testified he ended his phone call with Ringerberg and conversed with the man. Ultimately, the man "pulled out a gun," grabbed a bat that Gallaher had been holding, and directed Gallaher to go upstairs. When they reached the door to Gallaher's apartment, the man told Gallaher, " 'You're going to put your stuff and your [PlayStation 3] in my bag.' " Gallaher stated he refused to enter his apartment and the man shot

- 2 -

him in the leg. After being shot, Gallaher entered his apartment and was assisted by the individuals inside until he could be taken to the hospital for treatment.

¶ 7        On cross-examination, Gallaher testified he had a baseball bat with him at the time of the shooting "[b]ecause there was an incident that night in [his apartment] where friends had brought people over that were trying to fight us." He stated he wanted to be "prepared" because that "same friend" called him to tell him "they were going to come back." He further acknowledged that at the time of the shooting, he sold cannabis because he did not have a job.

¶ 8        Gallaher's roommates, friends, and girlfriend also testified for the State. They corroborated Gallaher's testimony regarding what occurred prior to and immediately after the shooting, including that individuals in the group had smoked marijuana. Aside from Gallaher, none of the witnesses observed the shooter.

¶ 9        The State's evidence showed defendant became a suspect in the case after the police spoke with three individuals—Ella Epperson, Maya Blankenship (also identified in the record as Amaya), and Madison Burton. Thereafter, a photo array was prepared that included defendant's photograph, and it was shown to Gallaher. Gallaher identified defendant as the person who shot him from the photo array. He also identified defendant as the shooter at trial.

¶ 10        The record reflects 17-year-old Epperson, 13-year-old Blankenship, and 14-year-old Burton all testified for the State that on the evening of October 29, 2013, they were riding in a car driven by Epperson. During that evening, they picked up an individual named "Illy," whom each witness identified as defendant. According to Blankenship, the group picked defendant up after dropping off Brandon Cain and Kaden Schmidt, who had been riding with them. When defendant got in the car, Epperson asked "if he was ready to rob somebody." Defendant responded that he had to pick something up first and Epperson drove to "a different house." Defendant went

inside and returned with a bag or a jacket. At approximately 10:45 p.m., Epperson took Blankenship home. Blankenship did not know where the group went after she was dropped off.

¶ 11     On cross-examination, Blankenship testified Epperson picked defendant up at about 10:30 p.m. When defendant stated he had to pick something up, Epperson drove him to a house "[a] couple of blocks down from where [they] picked him up." Upon questioning by defense counsel, Blankenship acknowledged providing a statement to the police and telling them Epperson picked up "Illy" before dropping Cain and Schmidt off instead of after.

¶ 12     Burton testified she knew Epperson from school and met Blankenship through Gallaher. She stated that after defendant joined the group in the car, Epperson asked him "[i]f he wanted to rob [Gallaher]." Defendant responded that he did and "went back inside *** the house." He returned with a "jacket or a bookbag or something" and stated he had "a banger," which Burton took to mean "a gun or something." Epperson then dropped Blankenship off at home. At 10:45 or 11 p.m., she took Burton home. Burton did not know what Epperson and defendant did after she went home.

¶ 13     On cross-examination, Burton testified she did not know whether Cain and Schmidt were also in the car when defendant first joined the group. Further, she acknowledged that she did not see the item defendant described as "a banger."

¶ 14     Epperson testified she was familiar with Gallaher's residence. After dropping Blankenship and Burton off at home, she dropped defendant off at approximately 10:30 or 11 p.m. in an area located approximately one block from Gallaher's residence. Epperson testified she turned her vehicle around to park on the right side of the street. Defendant was out of her sight for "[a] minute" before returning to the car. Epperson stated she was not paying attention to what defendant was doing when he left the car but she thought they "were going to get weed" from

"James" who was the only person she knew in that area. After defendant got back in the car, Epperson dropped him off by a Burger King and went home.

¶ 15    On cross-examination, Epperson testified that after picking defendant up, she took Blankenship and Burton home and did not "go anywhere else" before taking defendant to the area near Gallaher's apartment. She described the conversation in the car as "[n]othing abnormal."

¶ 16    After the State rested its case, defendant moved for a directed verdict, which the circuit court denied. Defendant then rested his case without presenting any evidence. Ultimately, the jury found defendant guilty of aggravated battery with a firearm and aggravated discharge of a firearm but not guilty of attempt (armed robbery). In June 2014, the court sentenced him to 14 years in prison for aggravated battery with a firearm and ordered him to pay restitution totaling $16,175.54.

¶ 17    Defendant filed a direct appeal, arguing (1) the State deprived him of a fair trial by improperly shifting the burden of proof, (2) the circuit court erred by failing to conduct a *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984)) after he stated at sentencing that he "had an inadequate defense," and (3) he was entitled to two additional days of sentence credit for time spent in pretrial custody. *People v. Jenkins*, 2016 IL App (4th) 140533-U, ¶ 3. On review, we agreed with defendant's sentence-credit claim but otherwise affirmed the circuit court's judgment. *Id.* ¶ 45. Defendant then filed a petition for leave to appeal to the supreme court, which it denied. See *People v. Jenkins*, No. 121596 (January 25, 2017).

¶ 18    In June 2017, defendant filed a *pro se* postconviction petition. He alleged (1) ineffective assistance of counsel based on his trial counsel's failure "to impeach *** State witnesses with their prior statements," submit certain jury instructions, and raise objections to the State's questioning of witnesses and its presentation of evidence and argument; (2) a violation of

his right to conflict-free representation based on trial counsel representing him while having "an application pending to work for the *** State's Attorney['s] Office"; and (3) ineffective assistance of appellate counsel for failing to argue on direct appeal his trial counsel's ineffectiveness as set forth in his postconviction petition.

¶ 19      Regarding his contention that trial counsel was ineffective for failing "to impeach *** State witnesses," defendant pointed to testimony from witnesses including Gallaher, Epperson, Blankenship, Burton, and Gallaher's two roommates, McVey and McColez. He argued his trial counsel should have explored why Gallaher was never charged with a drug-related offense and elicited testimony regarding a previous robbery attempt against Gallaher. Defendant asserted that Epperson should have been questioned about prior inconsistent statements she made to the police concerning her and defendant's actions on the night of the shooting and previous visits she made to Gallaher's residence. Defendant also argued that his trial counsel should have elicited testimony about statements Blankenship and Burton made, indicating they had previous plans with Epperson and others to rob Gallaher for money and marijuana. Finally, he argued Gallaher's roommates should have been cross-examined about a physical altercation Gallaher had on the day of the shooting with someone who was trying to rob him and that McColez should have been questioned about a telephone conversation he had with Blankenship on the day of the shooting, during which she stated, "they will be back."

¶ 20      To support his claims, defendant attached to his *pro se* petition police reports containing statements from the witnesses at issue. According to those reports, Epperson, Blankenship, and Burton had been to Gallaher's residence twice on October 29, 2013, prior to the shooting. On one occasion, Epperson inquired if Gallaher had "an ounce of pot" that Cain wanted to buy. During a second visit, Epperson, Blankenship, and Burton were accompanied by Cain and

Schmidt. Witnesses acknowledged that a physical altercation occurred between Schmidt and Gallaher, during which Schmidt knocked Gallaher over, knocked Gallaher's hat off, and looked for "a blunt" behind Gallaher's ear. The witnesses further reported that a verbal altercation occurred between Cain and one of Gallaher's roommates.

¶ 21    The police reports also showed Epperson, Blankenship, and Burton acknowledged knowing about, or being involved in, a plan to take property from Gallaher. Specifically, Epperson stated she knew about a plan that Cain and Schmidt had to take something from Gallaher. When discussing the shooting incident, Blankenship indicated she was involved with "a first attempted theft" along with Epperson, Burton, Schmidt, and Cain. After the altercation between Schmidt and Gallaher, Blankenship called to warn Gallaher that Epperson stated "they" would "go back over and try to get the stuff from" Gallaher. She also reported that Epperson stated she was going to pick up "Illy," Cain, Schmidt, and others "to go get the stuff from" Gallaher. Later, Epperson told Blankenship "that if [Blankenship] didn't stop telling people that Illy was involved, he would come shoot her or have some of his people beat her up." The reports show Burton stated she went to Gallaher's apartment with Epperson, Blankenship, Cain, and Schmidt, and that the group had a plan to rob Gallaher of marijuana and money.

¶ 22    Finally, according to the police reports, defendant's roommates stated they believed that Schmidt was attempting to take marijuana and money from Gallaher at the time of their physical altercation. McColez also acknowledged getting into a verbal argument with Cain and Schmidt outside of the apartment and stated, after those individuals left, he received a phone call from Blankenship who told him " 'they will be back.' "

¶ 23    The record reflects the circuit court reviewed defendant's *pro se* postconviction petition, appointed counsel to represent him, and set the matter for further hearing. In November

2017, defendant's attorney, Amber Davis, filed a certificate of compliance pursuant to Rule 651(c), stating as follows:

> "1. I have consulted with [defendant] by mail, in person, and by telephone to ascertain [defendant's] contentions of deprivation of constitutional rights.
>
> 2. I have examined the trial court file and record of proceedings at the trial and posttrial motion and sentencing hearing and the appellate court briefs and opinion and have made any amendments to the petition necessary for adequate representation of [defendant's] contentions."

Ultimately, the record reflects Davis did not amend defendant's *pro se* petition. In January 2018, the State filed a response to defendant's petition, denying each of his claims of error.

¶ 24 In October 2018, the circuit court conducted an evidentiary hearing in the matter. Defendant testified on his own behalf and, consistent with the allegations of his *pro se* petition, described the ways in which he believed his trial counsel was ineffective. Neither party presented any further evidence. Following the parties' arguments, the court denied defendant's petition. In ruling on the petition, the court indicated it had considered defendant's testimony, the parties' arguments on the petition, the pleadings, and what occurred at trial. In fact, it stated it had "a fairly good recollection of [defendant's] trial," over which it had presided. Relevant to the issues presented on review, the court found the decisions made by defendant's appellate counsel on direct appeal did not fall below an objective standard of reasonableness. It also determined that defendant's contention that his trial counsel should have impeached witnesses with prior statements involved matters of possible trial strategy and also did not fall below an objective standard of reasonableness.

¶ 25 This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27            On appeal, defendant argues his postconviction counsel violated Rule 651(c) by

failing to properly shape and support his *pro se* arguments alleging ineffective assistance of both

his trial and appellate counsel. He contends his *pro se* postconviction petition included meritorious

claims that (1) trial counsel provided ineffective assistance by failing to use "police reports to

impeach the credibility of the State's occurrence witnesses" and (2) appellate counsel was

ineffective for failing to raise meritorious issues apparent from the record on direct appeal.

¶ 28                          A. Postconviction Procedures and
                    Reasonable Assistance of Postconviction Counsel

¶ 29            "The Post-Conviction Hearing Act [(Act)] provides a procedural mechanism

through which criminal defendants can assert that their federal or state constitutional rights were

substantially violated in their original trials or sentencing hearings." *People v. Buffer*, 2019 IL

122327, ¶ 12, 137 N.E.3d 763 (citing 725 ILCS 5/122-1(a) (West 2014)). Proceedings under the

Act are divided into the following three stages:

> "At the first stage, the circuit court determines whether the petition is frivolous or
>
> is patently without merit. [Citation.] If the petition is not dismissed at the first stage,
>
> it advances to the second stage, where the court may appoint counsel for an indigent
>
> defendant and the State may file responsive pleadings. [Citations.] If the petition
>
> makes a substantial showing of a constitutional violation, the petition proceeds to
>
> the third stage, where the court conducts an evidentiary hearing." (Internal
>
> quotation marks omitted.) *Id.* ¶ 45 (citing 725 ILCS 5/122-2.1(a)(2), 122-4, 122-5,
>
> 122-6 (West 2014)).

¶ 30            The sixth amendment right to counsel does not extend to postconviction petitioners.

*People v. Custer*, 2019 IL 123339, ¶ 30, 155 N.E.3d 374. Thus, they have "no constitutional right to counsel, effective or otherwise." *Id.* Instead, postconviction petitioners are "entitled to only the level of assistance guaranteed by the Act," which "has been judicially deemed to be a 'reasonable level,' a standard that is significantly lower than the one mandated at trial by our state and federal constitutions." (Internal quotation marks omitted.) *Id.*

¶ 31    More specifically, defendants are entitled to a reasonable level of assistance at both the second and third postconviction stages. *People v. Johnson*, 2018 IL 122227, ¶ 16, 123 N.E.3d 1083. To help ensure that level of assistance, Rule 651(c) sets forth the following obligations for postconviction counsel: (1) consult with the petitioner to ascertain his contentions of deprivation of constitutional rights; (2) examine the record of proceedings at trial; and (3) make any amendments to the *pro se* petition that are necessary for an adequate presentation of the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 32    "The filing of a facially valid Rule 651(c) certificate creates a rebuttable presumption that counsel acted reasonably and complied with the rule." (Internal quotation marks omitted.) *People v. Beasley*, 2017 IL App (4th) 150291, ¶ 39, 85 N.E.3d 568. Further, "[f]ulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on [the] defendant's behalf." *People v. Greer*, 212 Ill. 2d 192, 205, 817 N.E.2d 511, 519 (2004). "If amendments to a *pro se* post[ ]conviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *Id.*

¶ 33                      B. Ineffective Assistance of Trial Counsel
                              for Failing to Impeach State Witnesses

¶ 34    In his *pro se* postconviction petition, defendant argued ineffective assistance of

counsel based on his trial counsel's failure to impeach State witnesses with their prior statements. To support his claims, he attached police reports to his petition, containing the witnesses' statements. On appeal, defendant first argues his postconviction counsel did not provide a reasonable level of assistance because she failed to properly shape and support that contention. Specifically, defendant argues the police reports demonstrated that all of the State's witnesses had a motive to lie about the events leading up to the shooting because all "were involved in illegal drug-related activities at Gallaher's apartment on the same evening that [Gallaher] was shot." He maintains competent postconviction counsel would have amended his *pro se* petition to state that specific claim and presented evidence to support it, including testimony from trial counsel and the occurrence witnesses at issue. Defendant complains that, instead, postconviction counsel presented only his testimony "without adequate preparation."

¶ 35        We note defendant's argument on appeal essentially amounts to a claim that his postconviction counsel failed to comply with the third obligation set forth in Rule 651(c), requiring counsel to amend a defendant's *pro se* petition as necessary for an adequate presentation of the defendant's contentions. However, as discussed, postconviction counsel is not required to amend a *pro se* petition to further a frivolous or patently nonmeritorious claim. In this instance, we find the specific claim raised by defendant on appeal fits that description. Accordingly, amendment of defendant's *pro se* postconviction petition to add the claim asserted on appeal was not necessary within the meaning of Rule 651(c).

¶ 36        Ineffective-assistance-of-counsel claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires that a defendant "show both that counsel's performance 'fell below an objective standard of reasonableness' and that the deficient performance prejudiced the defense." *People v. Hodges*, 234 Ill. 2d 1, 17, 912 N.E.2d 1204, 1212

(2009). Further, a claim is frivolous and patently without merit if it has "no arguable basis either in law or in fact, relying instead on an indisputably meritless legal theory or a fanciful factual allegation." (Internal quotation marks omitted.) *People v. Boykins*, 2017 IL 121365, ¶ 9, 93 N.E.3d 504. "An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *Hodges*, 234 Ill. 2d at 16. Also, "[f]anciful factual allegations include those which are fantastic or delusional." *Id.* at 17.

¶ 37    First, to the extent defendant asserts his trial counsel should have used the police reports themselves to impeach the State's witnesses, we find it is not arguable that his counsel's performance was deficient. "In general, police reports may be used for impeachment purposes but are inadmissible as substantive evidence." *People v. Gagliani*, 210 Ill. App. 3d 617, 629, 569 N.E.2d 534, 542 (1991). Further, "[police] reports can only be used to impeach the officer who actually wrote the report." *Id.*; see also *People v. Lucas*, 132 Ill. 2d 399, 430, 548 N.E.2d 1003, 1015 (1989) (stating the "[d]efendant's attempt to impeach [a witness] with a written statement of [another] was improper"); *People v. Shatner*, 174 Ill. 2d 133, 153, 673 N.E.2d 258, 267 (1996) ("Defense counsel could not attempt to impeach [a witness] with [a] detective's written statement."). As none of the witnesses identified by defendant authored the police reports at issue, the reports could not have been used to impeach those witnesses.

¶ 38    Second, even construing defendant's claim as one of ineffective assistance based on his trial counsel's failure to elicit testimony and cross-examine witnesses regarding the drug-related activities described in the police reports, his claim is still without arguable merit. Initially, we note that there was an abundance of evidence presented at defendant's trial establishing the occurrence of drug-related activities at Gallaher's apartment. Gallaher acknowledged smoking marijuana on the day of the shooting and that, while residing in the 11th

- 12 -

Street apartment, he was unemployed and sold marijuana. Evidence was also presented that drugs and drug paraphernalia were found inside the residence and that the witnesses present at the time of the shooting—McVey, McColez, Tucker, Perkins, and Shankland—had also been smoking marijuana. Given this evidence, there is no arguable basis in law or fact for defendant's assertion on appeal that his trial counsel was ineffective for failing to elicit testimony regarding the drug-related activities of Gallaher, his roommates, or the other witnesses who were inside Gallaher's apartment when the shooting occurred.

¶ 39   Next, defendant raises the same contentions as to Epperson, Blankenship, and Burton, asserting the police reports show the witnesses "were involved in illegal drug-related activities at Gallaher's apartment" on the day of the shooting. Significantly, however, he fails to identify precisely what information contained in those reports his counsel should have elicited to challenge the witnesses' credibility. We note a defendant's failure to present a fully developed and reasoned argument on appeal forfeits review of his claimed error. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (stating an appellant's argument must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on" and "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"). In this instance, defendant's argument fails to contain a sufficiently reasoned analysis of the issue presented.

¶ 40   Further, even setting aside the deficiencies in defendant's brief, his claim lacks arguable merit. The police reports indicate Epperson, Blankenship, and Burton visited Gallaher's residence prior to the shooting. As to drug-related activities, the reports reflect Epperson inquired whether Gallaher had marijuana that another individual wanted to buy and that the witnesses observed others with marijuana or smoking marijuana. No information in the police reports

- 13 -

indicates Epperson, Blankenship, and Burton actually purchased or used drugs at Gallaher's residence on the day of the shooting or otherwise. We fail to see how eliciting or impeaching the witnesses with the above information would have negatively impacted their credibility, established their motive to lie about the shooting, or affected the outcome of defendant's trial.

¶ 41 Finally, the decision of whether to cross-examine or impeach a witness is generally a matter of trial strategy and will not support an ineffective-assistance-of-counsel claim. *People v. Pecoraro*, 175 Ill. 2d 294, 326, 677 N.E.2d 875, 891 (1997). Here, although the police reports contained minimal information regarding drug-related activities engaged in by Epperson, Blankenship, and Burton, they did contain several statements indicating those witnesses' involvement in, or knowledge of, a prior and ongoing plan to rob Gallaher, as well as statements further linking defendant to both the witnesses and the plan. Thus, it would have been objectively reasonable for defendant's counsel, as a matter of trial strategy, to avoid eliciting testimony regarding the activities at Gallaher's residence prior to the shooting because those activities were connected with the ongoing robbery plan and might have more firmly established defendant's tie to the witnesses who testified against him, Gallaher, and the charged offenses.

¶ 42 In this case, defendant has failed to establish an arguable basis in law or fact for the specific ineffective-assistance claim he raises on appeal. Accordingly, because his claim was frivolous or patently without merit, his postconviction counsel was not required under Rule 651(c) to amend the *pro se* postconviction petition to include it. In so holding, we note defendant also argues his postconviction counsel failed to provide a reasonable level of assistance by not arguing at the evidentiary hearing the merits of his claim that the State's witnesses should have been impeached with police reports showing their drug-related activities. However, where postconviction counsel was not required to amend the *pro se* petition to include that specific

- 14 -

argument, counsel was also not required to argue the merits of the issue.

¶ 43                    C. Ineffective Assistance of Appellate Counsel

¶ 44        On appeal, defendant also argues his postconviction counsel failed to provide a reasonable level of assistance because she did not properly shape and support his *pro se* contention that his appellate counsel was ineffective for failing to raise meritorious issues apparent from the record on direct appeal. Specifically, he contends postconviction counsel should have amended his *pro se* petition to include claims that appellate counsel was ineffective for failing to (1) include a *Krankel* issue in his petition for leave to appeal to the supreme court, (2) challenge the circuit court's restitution order, and (3) challenge his prison sentence.

¶ 45        However, during postconviction proceedings, postconviction "counsel is only required to investigate and properly present the *petitioner's* claims." (Emphasis in original.) *People v. Davis*, 156 Ill. 2d 149, 164, 619 N.E.2d 750, 758 (1993). "In that regard, Rule 651(c) only requires postconviction counsel to examine as much of the record 'as is necessary to adequately present and support those constitutional claims raised by the petitioner.' " *People v. Pendleton*, 223 Ill. 2d 458, 475-76, 861 N.E.2d 999, 1009 (2006) (quoting *Davis*, 156 Ill. 2d at 164). "While postconviction counsel *may* conduct a broader examination of the record [citation], and may raise additional issues if he or she so chooses, there is no obligation to do so." (Emphasis in original.) *Id.* at 476.

¶ 46        Here, although defendant's *pro se* postconviction petition contained an allegation that his appellate counsel was ineffective for failing to raise issues apparent from the record, that claim was based solely on appellate counsel's failure to argue trial counsel's ineffectiveness for failing to (1) properly impeach State witnesses with prior statements, (2) submit certain jury instructions, and (3) raise objections to the State's questioning of witnesses and its presentation of

evidence and argument. Defendant did not include any claim in his *pro se* filing that was based on, or related to, the circuit court's failure to conduct a preliminary *Krankel* inquiry, the failure to include any issue within his petition for leave to appeal to the supreme court, or any portion of the sentence he received. Because none of those specific claims was raised by defendant in his *pro se* filing, postconviction counsel was not required to investigate those claims or raise them in an amended postconviction petition. Accordingly, we find no failure to comply with Rule 651(c) by defendant's postconviction counsel and no merit to defendant's claim that his counsel failed to provide him with a reasonable level of assistance.

¶ 47                                III. CONCLUSION

¶ 48          For the reasons stated, we affirm the circuit court's judgment.

¶ 49          Affirmed.